IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TARON JACQUETT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-cv-00277-P-BP |
| § | |
| AMERICAN AIRLINES AMR, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant's Motion to Dismiss (ECF No. 17) filed on July 7, 2020; Plaintiff's Response to American's Motion to Dismiss (ECF No. 22) filed on August 21, 2020; and Defendant's Reply (ECF No. 23) filed on September 4, 2020. This case was automatically referred to the undersigned pursuant to Special Order 3 on March 26, 2020. ECF No. 12. Based upon a full review of the relevant pleadings on file and the applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** American's Motion to Dismiss, **DISMISS** Plaintiff's claims under the Family Medical Leave Act ("FMLA") **with prejudice**, and **DISMISS** Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") **without prejudice.**

I.   **BACKGROUND**

Plaintiff Taron Jacquett ("Jacquett"), a former flight attendant for Defendant American Airlines AMR ("American"), brought this *pro se* discrimination suit under Title VII, claiming American terminated his employment after he was unable to work a flight due to his "military disabilities." ECF Nos. 1 at 1, 17 at 7. The following facts come from the Complaint, and the Court

1

accepts them as true for purposes of considering American's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

Jacquett has a military service-connected injury to his back, and during his employment with American, he also injured his right knee while on duty. ECF No. 1 at 1. On April 2, 2017, Jacquett was unable to work a flight due to these injuries and chose to exercise his rights under the FMLA to "remove [himself] from the flight." ECF Nos. 1 at 1, 22-1 at 2. When he told the flight's captain that he was using his leave, the captain "was not pleased" and made derogatory comments towards him. ECF No. 1 at 1. Being "unhappy" with Jacquett, this "white captain" then filed a "false report" against him. ECF No. 22-1 at 2. Thereafter, American's human resource department ("HR") questioned him "aggressively" and accused him of faking his injury. ECF No. 22-1 at 2. As a result of "not believing" that he was actually injured, HR decided to look into his use of travel pass benefits in order to terminate him. *Id.* Jacquett was subsequently suspended in May 2017. ECF No. 22-1 at 1. American suspended Jacquett and initiated a seven-month long investigation in order to terminate him and to "protect the captain." ECF No. 1 at 1.

In response to these events, on October 20, 2017, Jacquett filed an intake questionnaire with the United States Equal Employment Opportunity Commission ("EEOC"), claiming he was discriminated against due to his race and disability. ECF No. 22-1 at 1-4. In his filing, he stated that he had taken FMLA leave before and American had never looked into his usage of pass benefits until the "white pilot" filed the "false report." *Id.* at 2. He also asserted that other flight attendants of a different race were not suspended and investigated after "calling in sick due to injury." *Id.* Jacquett selected "Box 2" on the questionnaire, stating that he would like to file a charge of discrimination and that he authorized the EEOC to investigate his claim. *Id.* at 4. American

terminated Jacquett's employment on October 24, 2017, due to falsifying information related to his pass benefits. ECF No. 22-5. Jacquett received a Notice of Suit Rights from the EEOC on November 12, 2019. ECF No. 1 at 2.

Jacquett sued American on January 24, 2020. ECF No. 1. American seeks dismissal of Jacquett's Complaint because the statute of limitations bars his FMLA claims, he failed to exhaust his administrative remedies for his claims of retaliation, violation of the ADA, or racial discrimination, and he has failed to state a claim upon which relief can be granted. ECF No. 17.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the

plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548-49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"). Nonetheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Moreover, courts may dismiss an action with prejudice if the defendant is entitled to absolute immunity because the "plaintiff will never have a claim against the defendant based on the particular facts alleged." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

### B. *Pro se* pleading standards

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, as noted above, a court may dismiss a complaint with prejudice if the plaintiff has pleaded his best case. *Jones v. Greninger*, 188 F.3d at 326-27 (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Likewise, amendment is not required where it would be futile, where "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion.'" *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

## III. ANALYSIS

### A. The statute of limitations bars Jacquett's FMLA claims.

The FMLA has a two-year statute of limitations, unless the alleged violation was willful, in which case, it is three years. *See* 29 U.S.C. § 2617(c)(1); *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 392-93 (5th Cir. 2005). To establish a willful violation of the FMLA, "a plaintiff must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Henson*, 128 F. App'x at 393. A negligent violation of the FMLA is not a willful violation. *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016).

Here, Jacquett has supplied no meaningful facts that American either engaged in a willful violation of the FMLA, or that it acted with reckless disregard of Jacquett's rights. Jacquett simply asserts that he took his FMLA leave to remove himself from a flight he was scheduled to work, and American investigated his use of travel pass benefits after that incident. ECF Nos. 1 at 1, 22-1 at 4. The investigation revealed that Jacquett had falsified information regarding his pass benefits, and American terminated his employment as a result. ECF No. 22-5 at 1. Although Jacquett does not

explain his theory of recovery, it appears that he brings his claims under two assumptions: 1) the proximity of his taking FMLA leave and missing the flight to his termination is sufficient to prove a violation as a matter of law; and 2) that the FMLA protects employees from discipline after they take their FMLA leave even if they have committed misconduct. However, neither of these assumptions is correct.

Jacquett claims that American "retaliated or punished" him for using his FMLA leave by suspending him and preventing him from working or using his flight pass benefits for himself and his family. ECF No. 22 at 25. He further claims that the pilot's derogatory comments regarding his dislike for working with black disabled veterans and a fellow flight attendant's asking him if he was "sure [he] want[ed] to get off?" "is the very definition of FMLA interference." *Id.* After this interaction, Jacquett filed a discrimination complaint with American's HR department. ECF No. 22 at 24. Two days after the HR representative in charge of Jacquett's claim completed his investigation, Jacquett was terminated. *Id.* Jacquett claims that because his termination "was relayed to [him] two days after Mr. Grossnickle completed his investigation of the discrimination claims is the casual link between the protected activity and the adverse employment action." *Id.*

While temporal proximity may in some cases be sufficient to establish a prima facie case of discrimination under the FMLA, such cases "uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In establishing this rule, the Supreme Court cited a Tenth Circuit decision which stated, "a one and one-half month period between protected activity and adverse action may, by itself, establish causation." *Clark Cnty. Sch. Dist.,* 532 U.S. at 274 (citing *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted)); *see also Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (a five-month gap is too long absent other evidence). Here, Jacquett used his FMLA leave

in April 2017, but he was not terminated until October 24, 2017, over six months later. Since Jacquett's termination did not occur "very close" to his taking leave under the FMLA, there is no evidence of causation due to temporal proximity.

As to the second assumption, the FMLA does not offer blanket protection from all adverse employment actions that follow exercise of FMLA rights. The FMLA only prohibits adverse actions that result from the exercise of FMLA rights or in retaliation for the exercise of those rights. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 334 (5th Cir. 2005) (causal link between protected activity and adverse employment action required). Here, Jacquett took his FMLA leave to remove himself from a flight in April 2017, but he was not fired for falsifying information on his family pass benefits paperwork until October 2017. The mere fact that American investigated his use of pass benefits after he had taken FMLA leave does not establish a causal link between his protected activity of taking FMLA leave and his termination for misusing his pass benefits because the FMLA does not protect Jacquett's use of pass benefits. Thus, simply because American was aware that Jacquett had used his FMLA leave and then terminated his employment six months afterwards, is not evidence of a willful violation of the FMLA.

Consequently, the limitations period that applies to Jacquett's FMLA claim is two years. Because Jacquett filed this case on January 24, 2020, only events that took place on or after January 24, 2018 can support his claim. However, Jacquett complains of American's actions that occurred in April 2017. ECF Nos. 1 at 1, 22 at 24. As a result, Jacquett's claims for violation of the FMLA are untimely. Jacquett argues that the EEOC received his complaint on October 20, 2017, which "preserves" that date, not the date that he originally faxed the complaint to the EEOC, in respect to the statute of limitations. ECF No. 22 at 14. He further alleges that his FMLA claim is not time-barred because he received his Notice of Suit Rights from the EEOC on November 12, 2019, and he

filed this suit on January 24, 2020, which he claims is within the ninety-day time period. *Id.*

However, Jacquett's assertion is incorrect. The Supreme Court has held that filing a charge with the EEOC does not toll the statute of limitations for claims not required to be brought to the EEOC before filing suit. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 466 (1975). Unlike claims that are brought under the ADA or Title VII, "a plaintiff is not required to file an EEOC charge to pursue an FMLA claim." *Zavala v. Silverleaf Resorts, Inc.*, No. 3:16-cv-03186-M, 2018 WL 6252551, at *2 (N.D. Tex. Nov. 2, 2018), *rec. adopted*, 2018 WL 6250547 (N.D. Tex. Nov. 29, 2018); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("Title VII requires employees to exhaust their administrative remedies before seeking judicial relief"); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *4 n.7 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) ("The Court notes that an EEOC charge need not be filed in an FMLA action"); *Wilson v. Dall. Indep. Sch. Dist.*, No. 3:97-cv-0281-BC, 1998 WL 47635, at *5 (N.D. Tex. Jan. 30, 1998) (Boyle, J.) (plaintiffs not required to exhaust administrative remedies before pursuing FMLA claims).

Accordingly, Jacquett's filing of a complaint with the EEOC did not toll the statute of limitations for his FMLA claims because the FMLA does not require him to exhaust his administrative remedies prior to filing his lawsuit. *See Zavala*, 2018 WL 6252551, at *2; *see also Wilson*, 1998 WL 47635, at *5. Therefore, since his termination occurred more than two years before January 24, 2020, Judge Pittman should dismiss Jacquett's FMLA claims as time-barred pursuant to 29 U.S.C. § 2617(c)(1). Although dismissal normally would be without prejudice, Judge Pittman should dismiss the FMLA claims with prejudice since amendment could not cure the untimeliness of those claims.

### B. Jacquett has not exhausted his administrative remedies for violations of Title VII and the ADA.

Individuals who file claims of discrimination under Title VII "must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *Taylor*, 296 F.3d at 379, or when he "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789, (5th Cir. 1996).

When a plaintiff alleges claims of retaliation or racial discrimination under Title VII and discrimination under the ADA, the plaintiff "must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination, or within 300 days of the alleged discrimination if he institutes his action with the appropriate state agency" and "receives a statutory notice of right to sue." *Owens v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-CV-3162-L, 2017 WL 3190727, at *2 (N.D. Tex. May 16, 2017) (citing *Dao*, 96 F.3d at 789; 42 U.S.C. § 2000e-5(e)(1)); *see Gonzales v. Pan Am. Labs, L.L.C.*, No. 3:14-CV-2787-L, 2015 WL 5731289, at *2 (N.D. Tex. Sept. 29, 2015) (citing *Taylor*, 296 F.3d at 378-79); *see Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 405 (5th Cir. 20017). However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airline, Inc.*, 455 U.S. 385, 393 (1982) (footnote omitted). Therefore, the late filing of an EEOC charge does not deprive the court of subject matter jurisdiction, but instead, the filing of an EEOC charge "is a precondition to filing suit in district court." *Taylor*, 296 F.3d at 379 (quoting *Dao*, 96 F.3d at 789).

Here, Jacquett contends that the time for filing his charge of discrimination was tolled by the

9

EEOC's delay in processing his questionnaire. Specifically, he claims that since the EEOC received his intake questionnaire on October 20, 2017, that date is "preserved," not the date that he originally faxed the complaint to the EEOC. ECF No. 22 at 14. However, Jacquett has not alleged that he timely filed a Charge of Discrimination, that he provided American with notice of his intake questionnaire, or that American received any notice of these claims before Jacquett filed suit. Nevertheless, American attached a copy of his Charge to its Motion to Dismiss. ECF No. 17-1. In his Charge, Jacquett claims that American terminated his employment on October 20, 2017, despite his termination notice being dated October 24, 2017. ECF Nos. 17-1, 22-5. American correctly asserts that this is the last date on which any violation of Title VII or the ADA could have occurred. *See* ECF No. 17 at 13; *Heckler v. Prod. Dev. Corp.*, No. 3:02-cv-2532-AH, 2003 WL 22961214, at *2 (N.D. Tex. Nov. 19, 2003). As stated above, a charge must be filed within 300 days of the latest date in which any of Jacquett's claims against American could have occurred. *See Owens*, 2017 WL 3190727, at *2. This means that Jacquett was required to file his Charge by August 20, 2018. However, the EEOC received his Charge on October 22, 2018. *Id.* Therefore, his Charge was not filed within the required 300 days of any possible discriminatory or retaliatory act, and Jacquett thus did not exhaust his administrative remedies.

The Fifth Circuit has held that dismissal for failure to exhaust administrative remedies is required when a plaintiff fails to timely file a charge of discrimination. "Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted." *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (quoting *Davis*, 893 F.3d at 307). "Even though administrative exhaustion is not a *jurisdictional* requirement, it is still a requirement." *Id.* (emphasis in original). Accordingly, because Jacquett failed to exhaust his administrative remedies prior to filing suit, Judge Pittman should dismiss Jacquett's claims for retaliation,

discrimination and failure to accommodate under the ADA, and racial discrimination.

Ordinarily, a dismissal for failure to state a claim under Federal Rule 12(b)(6) is a ruling on the merits of a case and would be with prejudice. *Csorba v. Varo, Inc.,* 58 F.3d 636, 636 (5th Cir. 1995) (per curiam) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977)). However, "[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 n. 5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 478 (5th Cir. 1997); *Stroy*, 896 F.3d at 698 n.2; *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)). Therefore, Judge Pittman should dismiss Jacquett's claims of retaliation and racial discrimination under Title VII and for discrimination and failure to accommodate under the ADA without prejudice.

## IV. CONCLUSION

Because Jacquett did not timely assert his claims under the FMLA, and because he did not administratively exhaust his claims under Title VII and the ADA, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** American's Motion to Dismiss (ECF No. 17), and **DISMISS** Jacquett's FMLA claims **with prejudice** and **DISMISS without prejudice** his claims of retaliation and racial discrimination under Title VII and for discrimination and failure to accommodate under the ADA.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on November 10, 2020.

                                                                         Hal R. Ray, Jr.
                                                                         UNITED STATES MAGISTRATE JUDGE